UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| LEE FRUTKIN, | : | |
|     Plaintiff, | : | |
| | : | |
| v. | : | 3:07-cv-00899 (WWE) |
| | : | |
| WAL-MART STORES, INC. | : | |
|     Defendant. | : | |

**MEMORANDUM OF DECISION ON**
**DEFENDANT'S PARTIAL MOTION TO DISMISS**

This action arises from plaintiff Lee Frutkin's claims that defendant Wal-Mart Stores, Inc., terminated him in violation of the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 et seq. Plaintiff has brought an action against defendant for violating plaintiff's rights under the FMLA and for negligent infliction of emotional distress. Now pending before the Court is the defendants' Partial Motion to Dismiss (Doc. #17) plaintiff's claim of negligent infliction of emotional distress. Plaintiff has not filed any opposition to defendant's Motion.

The Court has jurisdiction over plaintiff's claims pursuant to 28 U.S.C. § 1331 as to plaintiff's federal law claim and pursuant to 28 U.S.C. § 1367 as to plaintiff's state law claim.

For the reasons set forth below, defendant's Partial Motion to Dismiss will be granted.

**BACKGROUND**

For purposes of ruling on the Motion, the Court takes the facts alleged in the complaint to be true. The following factual background relates to count two of the

1

Amended Complaint.

Plaintiff was employed by Wal-Mart Stores East, L.P., the operating entity of defendant Wal-Mart Stores, Inc. Plaintiff was store manager at defendant's store in Shelton, Connecticut. He was an at-will employee.

On January 9, 2006, plaintiff took a medical leave of absence. Soon after his leave began, Brian West was appointed as the District Manager for the area that included the Shelton store. On February 16, 2006, plaintiff returned to his position on a restricted basis.

In late February 2006, West questioned plaintiff as to why certain employees had been classified in the wrong job code.[1] Plaintiff explained why he had coded these employees in the manner in which he had done and offered to change these employees' job codes. West told plaintiff to "hold off." According to plaintiff, these job codes had been approved in nine previous store audits.

On March 2, 2006, West called for plaintiff to meet with him in plaintiff's office in the Shelton store. Also in attendance was the District Market Asset Protection Manager, Lauri Lucia. West told plaintiff to surrender his keys to the store and "go home." West then told plaintiff that it was his decision whether to terminate plaintiff. The next morning, West and plaintiff met at Wal-Mart's New Haven store. Stating that it was an "integrity issue" because plaintiff had "falsified" the job codes, West informed plaintiff that he was being terminated.

---

[1] Wal-Mart uses job codes to dictate employees' salaries. This procedure removes managerial discretion from salary determinations. By incorrectly classifying certain employees, they earned a greater salary than they should have had.

Plaintiff alleges that West commenced the termination process Thursday afternoon at five o'clock but did not finish it until seven o'clock the next morning. During that time, plaintiff claims that he had no appetite and could not sleep due to the anxiety and emotional distress of the termination. Plaintiff further alleges that he was embarrassed and humiliated that the "termination process" began in plaintiff's office in the Shelton store and in front of Lauri Lucia. In addition, plaintiff contends that because he had a recent diagnosis of high blood pressure, admittedly unknown to West, the manner of the termination caused plaintiff to fear for his life.

Following his termination, plaintiff contacted several Wal-Mart regional and national executives. In early May 2006, plaintiff had a series of telephone calls with Mariana Brugler, Divisional Human Resources Manager. She allegedly told plaintiff that he been "singled out." She offered plaintiff a position as a store manager at another store that was farther away from plaintiff's home and with a reduced salary. Plaintiff declined this position.

## DISCUSSION

The function of a motion to dismiss is "merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." Ryder Energy Distrib. v. Merrill Lynch Commodities, Inc., 748 F. 2d 774, 779 (2d Cir. 1984). When deciding a motion to dismiss, the Court must accept all well-pleaded allegations as true and draw all reasonable inferences in favor of the pleader. Hishon v. King, 467 U.S. 69, 73 (1984). The complaint must contain the grounds upon which the claim rests through factual allegations sufficient "to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1965

(2007). A plaintiff is obliged to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible. Iqbal v. Hasty, 490 F.3d 143, 157-58 (2d Cir. 2007) (applying flexible "plausibility standard" to Rule 8 pleading).

Plaintiff alleges that defendant negligently inflicted emotional distress on him through West's conduct during the termination process. Plaintiff asserts that defendant, through West, failed to use ordinary care in the termination process, created an unreasonable risk of causing emotional distress and terminated plaintiff.

To establish a claim for negligent infliction of emotional distress, plaintiff must demonstrate that (1) the defendant's conduct created an unreasonable risk of causing the plaintiff emotional distress; (2) the plaintiff's distress was foreseeable; (3) the emotional distress was severe enough that it might result in illness or bodily harm; and (4) the defendant's conduct was the cause of the plaintiff's distress. Carrol v. Allstate Ins. Co., 262 Conn. 433, 444 (2003)

The Supreme Court of Connecticut has held that "a termination may give rise to a claim for negligent infliction of emotional distress if the conduct under review involved an unreasonable risk of ... emotional distress ... that ... might result in illness or bodily harm." Perodeau v. City of Hartford, 259 Conn. 729, 754-755 (2002). A plaintiff "making an emotional distress claim must show that a reasonable person would have suffered emotional distress ... that ... might result in illness or bodily harm." Id. at 755 (emphasis added); see also 3 F. Harper, F. James, & O. Gray, Torts (2d Ed. 1986) § 18.4, p. 691 ("Generally defendant's standard of conduct is measured by the [emotional] reactions to be expected of normal persons.... Activity may be geared to a

4

workaday world rather than to the hypersensitive."). The court recognized that "it is clear that individuals in the workplace reasonably should expect to experience some level of emotional distress, even significant emotional distress, as a result of conduct in the workplace." Perodeau at 757.

In the employment context, a claim for negligent infliction of emotional distress must occur in the "termination process" as "only conduct occurring in the process of termination can be a basis for recovery for negligent infliction of emotional distress in the employment context." Brunson v. Bayer Corp., 237 F. Supp. 2d 192, 208 (D. Conn. 2002).

The conduct complained of must rise to the level of "sufficiently wrongful" or "particularly egregious." Perodeau, 259 Conn. at 755. "Mere inconsiderate or precipitous conduct may not suffice." Armstead v. Stop & Shop Cos., 2003 U.S. Dist. LEXIS 4107, *18 (D. Conn. March 17, 2003). Wrongful conduct means that the conduct was "sufficiently wrongful that the defendant should have realized that its conduct involved an unreasonable risk of causing emotional distress and that [that] distress, if it were caused, might result in illness or bodily harm." Perodeau at 751.

Based on the facts alleged in plaintiff's complaint, the Court finds nothing in the manner in which plaintiff was terminated that suggests that defendant engaged in conduct that was sufficiently wrongful that it should have realized that its conduct involved an unreasonable risk of causing plaintiff emotional distress that might result in illness or bodily harm. This conclusion holds regardless of whether the "termination process" includes both the Thursday and Friday events, as plaintiff alleges, or only the Friday event, as defendant contends.

Plaintiff claims that he was brought into a private office where another employee witnessed his termination. Because the decision was not yet made, West only told plaintiff that he may be terminated the following morning. These facts do not demonstrate any particularly egregious or sufficiently wrongful conduct. If anything, West's conduct may have risen to the level of demeaning or insensitive. Such conduct, however, does not meet the standard for negligent infliction of emotional distress.

Moreover, it is reasonable that a person terminated, or told that he may be terminated the following day, to feel anxious or have some level of emotional distress. Such anxiety or emotional distress, however, does not reasonably rise to the requisite level of "illness or bodily harm."

## CONCLUSION

For the foregoing reasons, defendant's Partial Motion to Dismiss (Doc. #17) is GRANTED.

Dated at Bridgeport, Connecticut, this 7th day of April, 2008.

                                          /s/
                                    Warren W. Eginton
                                    Senior United States District Judge